UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CONSTRUCTION ENTERPRISES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-00711 |
| ) | Judge Sharp |
| WATERSTONE AT PANAMA CITY ) | |
| APARTMENTS, LLC and the TAPESTRY ) | |
| GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Pending before the Court is Plaintiff/Counter-Defendant Construction Enterprises, Inc.'s ("CEI's") Motion to Dismiss Counter-Complaint (Docket No. 6) which has been fully briefed by the parties (Docket Nos. 7, 13 & 17). Also pending is a Report and Recommendation ("R & R") (Docket No. 45) from the Magistrate Judge, to which Defendants/Counter-Plaintiffs Waterstone at Panama City Apartments, LLC ("Waterstone") and the Tapestry Group, Inc. ("Tapestry") (collectively "Defendants") have filed objections, (Docket No. 48), and CEI has filed a response (Docket No. 49). The Court will deny CEI's Motion to Dismiss, accept the R & R, overrule Defendants' Objections, and return the matter to the Magistrate Judge to determine whether any additional attorney's fees should be imposed as a sanction in this case.

**I. MOTION TO DISMISS**

For purposes of the Motion to Dismiss, the factual allegations need only be outlined briefly as follows:

In September 2008, CEI and Waterstone entered into a construction contract ("the HUD

1

Agreement") by which CEI, as general contractor, constructed an apartment complex named Waterstone at Jenks in Panama City, Florida. Under the HUD Agreement, Waterstone was obligated to pay CEI the actual cost of construction, in an amount not to exceed $18,465,778.00. CEI hired BCL Civil Contractors ("BCL") to clear a portion of the wetlands at the location where the apartments were to be constructed.

In addition to the construction contract, CEI and Waterstone entered into a Fee Agreement. Pursuant to the Fee Agreement, Tapestry agreed to guarantee Waterstone's performance under the HUD Agreement, and Waterstone agreed to pay CEI a contractor's fee in the amount of $646,408.00.

On June 8, 2010, CEI filed a "Complaint on Sworn Account" in the Williamson County Chancery Court. In Count I, CEI alleged breach of contract by Waterstone, claiming that it was still owed $430,910.88 under the Fee Agreement. In Count II, CEI alleged breach of guaranty by Tapestry because it failed and refused to pay the amount due CEI by Waterstone.

After the case was removed to this Court, Defendants filed an answer and a four count Counter-Complaint alleging breach of contract, contractual set-off, tortious interference with prospective business advantage, and violation of the Tennessee Consumer Protection Act ("TCPA"). CEI moves to dismiss the Counter-Complaint in its entirety, arguing it fails to state a claim upon which relief can be granted.

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the Counter-Complaint "need to be sufficient to give notice to the [Counter-Defendant] as to what claims are alleged, and the [Counter-Plaintiff] must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, 129

2

S.Ct. 1937, 1949-50 (2009)). "'A legal conclusion couched as a factual allegation,'" however, "need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) and Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)).

CEI first moves to dismiss on the grounds that Waterstone and Tapestry seek damages for "lost rental income and business incurred due to construction delays," (Docket No 6 at 2), but the Fee Agreement contains a mutual waiver of consequential damages. A fundamental problem with this argument is that it understates the allegations in the Counter-Complaint.

Defendants allege that BCL, as CEI's agent, cleared more wetlands than allowed under the permit issued by the Florida Department of Environmental Protection which, in turn, caused Defendants damages. In fact, in response to CEI's Motion to Dismiss, Defendants assert that the "out-of-pocket expenses totaled no less than $93,000 for the clean up and fines resulting from CEI's subcontractors exceeding its authorization to clear wetlands." (Docket No. 13 at 3). This is not a "changed position" as CEI contends (Docket No. 17 at 1) because the exact same figure – $93,000.00 – is listed in the Counter-Complaint as the amount of "monetary damages" Waterstone suffered as a result of CEI's alleged breach of contract. (Docket No. 4 at 9, ¶ 21).

CEI points to three cases in which courts have indicated that fines and remediation fees are consequential damages, but those cases are unpersuasive under the circumstances of this case. Camino Real Mobil Home P'ship v. Wolfe, 891 P.2d 1190, 1197 (N.M. 1995) dealt with the issue in the abstract, and both Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 183 (7th Cir. 1986) and Envirotech Corp. v. Halco Eng'g Inc., 364 S.E.2d 215, 219 (Va. 1988) dealt with contracts which excluded "without limitation" specified incidental or consequential damages, including fines paid to governmental agencies.

3

Here, in marked contrast, the waiver provision does not contain any "without any limitation" language, nor does it contain any indication that fees and remediation costs are consequential damages. In pertinent part, the waiver provision reads:

### § 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES

The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

> **.1** damages incurred by the owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

> **.2** damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

(Docket No. 6-2 at 40).

"*Expressio unius est exclusio alterius*" is a maxim of contract construction acknowledged under both Tennessee law, D & E Const. Co. v. Robert J. Denley Co., Inc., 38 S.W.3d 513, 519 (Tenn. 2001) upon which CEI relies, and Florida law, Keen v. Florida Self-Ins. Fund, 962 S.2d 1021, 1023 (Fla. App. 2007), which is called for under the Fee Agreement.[1] It means the expression of one thing excludes all others, and, in this case, means (arguably) that fees and remediation costs which Defendants characterize as "direct out of pocket losses" (Docket No. 13 at 4) were not envisioned by the parties as waived by the consequential damages clause because they were not mentioned.

In any event, the Fee Agreement was not the only agreement governing the duties and obligations of the party. The HUD Agreement, which "takes precedence over all inconsistent

---

[1] Section 13.1 of Article 13 of the Fee Agreement provides that "[t]he Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern[.]" (Docket No. 6-2 at 36).

4

provisions" in the Fee Agreement, contains the following paragraph:

> If the Contractor observes that the Drawings and Specifications are at variance with any applicable codes, laws, ordinances, rules or regulations, or protective covenants, it shall promptly notify the Architect in writing, and any necessary changes shall be made as provided in this Contract for changes in the Drawings and Specifications. If the contractor performs any work knowing it to be contrary to such codes, laws, ordinances, rules or regulations, or protective covenants, without giving notice to the Architect, it shall bear all costs arising therefrom.

(Docket No. 6-1 at 1 & 2). Although CEI argues "[t]his provisions deals with a different situation" because there is no showing that the drawing and specifications were wrong and/or that CEI observed a variance in the drawings and specifications (Docket No. 17 at 3), that is something which the Court cannot decide merely on the pleadings.

CEI next moves to dismiss Defendants' tortious interference claim based upon Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691 (Tenn. 2002). In Trau-Med, the Tennessee Supreme Court recognized the tort of tortious inference with a business relationship and, in doing so, held a party can prevail on such a claim if it "can demonstrate the following: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*; and finally, (5) damages resulting from the tortious interference." Id. at 701 (italics in original, footnotes omitted).

CEI argues the Trau-Med elements are insufficiently pled because Defendants fail to allege improper motive and provide "no factual allegation that CEI intentionally interfered with Waterstone's leasing business." (Docket No. 7 at 6). CEI also argues "[i]ntefering with a prospective business advantage must be with a 'predominant purpose' and intent to harming [sic] the plaintiff."

5

(Docket No. 7 at 6). In response, Defendants argue "Waterstone and Tapestry have alleged facts from which the court may **infer** CEI's intent," and that "they properly alleged: (1) CEI's knowledge of Waterstone and Tapestry's prospective business relationships, and (2) CEI's failure to take steps necessary to remediate the actions of its negligent sub-contractor." (Docket No. 13 at 6, bold in original).

The intent issue presents a close call because Count III of the Counter-Complaint borders on a formulaic recitation of the elements, which is insufficient under Twombly. However, the Court finds the allegations sufficient to survive dismissal on the pleadings.

"Even if a claimaint cannot show improper motive, it can succeed on a claim for interference with economic expectation by showing improper means regardless of motive." HTC Sweden AB v. Innovatech Prod. and Equip. Co., 2008 WL 4510710 at *7 (E.D. Tenn. 2008) (citing, Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 184 (Tenn. Ct. App. 2007)). That is, "a plaintiff must prove either an 'improper motive' or 'improper means,' not both," and a claim for improper means is "dependent on the particular facts and circumstances of a given case." Lamdin v. Aerotek Comm. Staffing, 2010 WL 3896154 at *6 (E.D. Tenn. Sept. 30, 2010) (quoting, Trau-Med, 71 S.W. 3d 701 n.5)). Because the Court cannot discern the true facts from the pleadings, because Defendants specifically aver that "CEI acted in an intentional manner to interfere with [Defendants'] prospective business relationships" (Docket No. 4 at 10 ¶ 31), and because the Tennessee Supreme Court in Trau-Med indicated that it is impossible to provide a "precise all-encompassing definition of the term 'improper,'" 71 S.W.3d at 701 n.5, the Court will not dismiss Count III of the Counter-Complaint for failure to state a claim upon which relief can be granted.

## II. R & R AND DEFENDANTS' OBJECTIONS

After unsuccessful attempts to have Defendants supplement their initial disclosures and

6

Case 3:10-cv-00711   Document 51   Filed 09/22/11   Page 6 of 13 PageID #: 388

provide responses to interrogatories and production requests, CEI filed a Motion for Sanctions seeking dismissal of Defendants' Counter-Complaint, or lesser sanctions. Finding dismissal too harsh a sanction, the Magistrate Judge recommends in the R &R that Defendants damages on their Counter-Complaint be capped at $93,000.00, and that Defendants pay CEI $4,000.00 in attorney's fees.

Because the R & R was entered in accordance with Rule 72(b) of the Federal Rules of Civil Procedure, this Court's review is *de novo*. Under that standard of review, the Court finds that the Magistrate Judge's conclusion is fully supported by the record, and that capping available damages and imposing attorney's fees are appropriate sanctions to redress Defendants' dilatoriness and to serve as a warning to other litigants that ignoring scheduling orders, deadlines, and the federal rules comes at a cost. See, National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976) ("sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

Defendants first object to the R & R because capping their Counter-Complaint "amounts to a partial dismissal," and a dismissal is a "last resort" for which a warning must be given. (Docket No. 48 at 2). They insist this sanction is draconian because their "admitted delay in responding to discovery" was "only two months," and they supplemented their initial disclosures some five months before the scheduled trial date. (Id.).

Prior to dismissing a claim, a court should consider a number of factors, including whether the party against whom sanctions are imposed was warned that a failure to cooperate in discovery could lead to dismissal, and whether less drastic sanctions have already been imposed. See, Fharmacy Records v. Nassar, 379 Fed. Appx. 522, 524 (6th Cir. 2010) (collecting cases). However, it was precisely "because less drastic sanctions had not yet been imposed" that the Magistrate Judge

7

did not recommend complete dismissal of the Counter-Complaint, even though "there was a pattern of delay in this case" which he did "not condone." (Docket No. 45 at 8).

Like the Magistrate Judge, the Court finds that there was a pattern of unacceptable delay exhibited by Defendants in this case and limiting its potential damages on its Counter-claim is an appropriate response to that delay. This conclusion remains even if, as Defendants insist, limiting their damages on the Counter-complaint amounts to a "partial dismissal."[2]

A "federal court has the inherent authority to dismiss a [claim] if [a party] fails to comply with the rules or the court's orders governing discovery." Id. at 523. While the questions of whether prior warnings have been given and whether lesser sanctions have been imposed are factors to be considered, there are others, including whether the adversary was prejudiced and whether the conduct was due to willfulness, bad faith, or fault. Id. at 524. "'[N]one of the factors is outcome dispositive,'" and "'a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct.'" Id. (footnote omitted) (quoting, Schafer v. City of Defiance Police Dep't, 529 F.3d 731, 737 (6th Cir. 2008).

As noted, Defendants admit delay, but claim the delay was "only 2 months" and so there really was no need for sanctions. That argument, even in the abstract, is hardly persuasive; particularly given the timetables established in this case, and the effect Defendants' delay had in CEI's ability to defend against the Counter-Complaint.

On September 20, 2010, the Magistrate Judge, after consultation with the parties, entered a

---

[2] Defendants contention that capping their damages amounts to a "partial dismissal" is probably an overstatement because they pled that the "breach of contract cost Waterstone monetary damages in an amount no less than $93,000.00," (Docket No. 4 at 9, ¶ 21), and they argued that dismissal was inappropriate because the "out-of-pocket expenses totaled no less than $93,000 for the clean up and fines." (Docket No. 13 at 3). While both filings indicate Defendants costs or expenses were "no less than $93,000.00, neither filing even remotely suggests that the actual figure is over half-a-million dollars as they now claim.

8

scheduling order in the form of the Initial Case Management Order. That Order required the parties to make their Rule 26(a)(1)(A) disclosures within fourteen days. The Order set a discovery cut-off date of April 1, 2011, and an April 15, 2011, deadline for discovery related motions.

Aside from providing deficient initial disclosures, Defendants totally failed to comply with the foregoing requirements and deadlines, as well as the provisions regarding discovery under the federal rules. They did not categorize damages in their initial disclosures as required by Rule 26(a)(1)(A)(iii). They did not timely supplement their initial disclosure as required by Rule 26(e)(1)(A). They did not respond to CEI's interrogatories within the thirty days required by Fed. R. Civ. P. 33(b)(2), and they did not respond to the request for production of documents within the thirty days afforded by Fed. R. Civ. P. 34(b)(2)(A).

What Defendants did do was ignore CEI's requests for supplementation of the initial disclosure and requests for answers and responses to its outstanding discovery requests. After objecting to 17 of 25 interrogatories and 8 of 11 document requests, Defendants provided answers to interrogatories and document requests over two months after they were due and after the close of discovery. On May 22, 2011, over seven months after the initial disclosures, one and one-half months after the close of discovery, and long after the Motion for Sanctions was filed, Defendants provided CEI with "Supplemental Initial Disclosures" that indicated that their damages under the Counter-complaint was approximately $528,000.00. Those disclosures also directed CEI to Defendants' answers to interrogatories which identified seven individuals with knowledge about the case, five more than the two identified in the initial disclosures.

Given this scenario, there is no doubt that CEI has been prejudiced by Defendants' dilatory conduct. CEI was defending against what appeared to be a $93,000.00 Counter-Complaint. It was

9

only after discovery closed, however, that the figure officially increased more than fivefold,[3] and the number of potential witnesses identified by Defendants more than doubled.

"Scheduling orders are not mere formalities that can be disregarded or treated cavalierly." United States v. Parker, 165 F.Supp.2d 431, 439 (W.D.N.Y.. 2001). They serve an important case management function, and their terms are binding, unless changed. As one court has observed:

> A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." . . . The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [a party's] case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation[.]

Johnson v Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (internal citation omitted).

Where, as here, a party fails to comply with the terms of a scheduling order, the court may "issue any just orders," including "prohibiting the disobedient party from supporting or opposing designated claims" or dismissing a claim "in whole or in part[.]" Fed. R. Civ. P. 37(b)(1) & (b)(2)(A)(ii) & (iii). That is the net effect of the Magistrate Judge's recommendation, and it is entirely appropriate in this case.

Defendants next object to the Magistrate Judge's "recommendation" that Defendants "not be allowed an extension of the discovery deadlines in order to take out-of state depositions needed for proof at trial." (Docket No. 48 at 2). On this score, Defendants argue it was "excusable oversight" for counsel (who was new to the case) to overlook the scheduling order's requirement that the parties seek a telephone conference with the Magistrate Judge prior to filing any discovery motions.

This argument fails because Defendants' motion for an extension of time to complete

---

[3] Interestingly, when the claimed damages were increased to $528,000.00 in the Supplemental Initial Disclosure, the "itemized calculations" totaled $92,969.00, just $31.00 shy of the original $93,000.00 figure.

10

discovery was denied by Order dated May 20, 2011, months before the R & R was issued. The R & R simply noted that the denial of Defendants' request to extend discovery mooted CEI's request that Defendants be required to pay any future discovery costs.

Even if the objection was proper, and even if it had been made within 14 days of the Order as required by the rules, the Magistrate Judge's decision not to extend the discovery deadline was neither clearly erroneous nor contrary to law under Fed. R. Civ. P. 72(A). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). "'The primary measure of Rule 16' s 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.'" Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir.2002) (citation omitted). Here, Defendants were anything but diligent in fulfilling their discovery duties; the motion for an extension itself came after the discovery deadline. See, Oury v. Rapid City Reg'l Hosp., Inc., 2011 WL 1135461 at * 9 (D.S.D. Mar. 25, 2011) ("formal requests to the district court for an extension of time before deadlines have passed are obviously preferable to requests for an extension made after the deadlines in question have already passed").

Finally, Defendants object to the recommendation that they be required to pay CEI reasonable attorney's fees. Defendants argue no sanctions are warranted and the amount of fees recommended by the Magistrate Judge is arbitrary and unsupported by the record.

Rule 37(b)(2)(A) catalogues a number of orders which a court may enter when a party fails to obey a discovery order. Rule 37(b)(2)(C), in turn, provides:

> Instead of or in addition to the orders [permitted by section (b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

11

Based upon the record then before him, the Magistrate Judge recommended that attorney's fees be assessed in the amount of $4,000.00. After discussing Rule 37(b)(2)(C), he wrote:

> . . . Here, the failure to obey the Court-ordered discovery deadline was not substantially justified. Accordingly, the Magistrate Judge recommends that Defendants and attorney pay the reasonable expenses, including attorneys' fees, incurred by Plaintiff in responding to delayed discovery and in filing and arguing the motion for sanctions. Despite the Plaintiff's submitted affidavits, requesting $5,200 and $3,342 for a total of $8,542 in attorneys' fees, the Magistrate Judge believes the submissions are lacking sufficient detail to award the full requested amount. Therefore, the Magistrate Judge recommends the Defendants pay $4,000 in attorneys' fees to the Plaintiff, unless more specific fee information is submitted.

(Docket No. 45 at 10-11).

The Court agrees that Defendants have failed to show their failure to comply with the scheduling order and the discovery rules in this case was substantially justified, and they have not shown other circumstances which would make an award of expenses unjust. Contrary to Defendants' argument, the award of $4,000.00 in attorney's fees is supported by the billing statements (Docket No. 44-3) submitted in support of the the Motion for Sanctions, and it is not excessive.

In fact, as the Magistrate Judge observed, a further award may be appropriate. In accordance with the R & R and prior to Defendants filing of their Objections, CEI submitted further supplementation to its fee request. (Docket Nos. 46 & 47). Since the Magistrate Judge indicated he would entertain a request for more attorney's fees upon supplementation of the record, and since Rule 37(b)(2)(C) calls for "the reasonable expenses, including attorney's fees," the Court will leave it to the Magistrate Judge in the first instance to determine whether any additional attorney's fees are warranted in this case. See, Deville v. Givaudan Fragrances Co., 419 Fed. Appx. 201, 209 (3rd Cir. 2011) ("At bottom, sanctions awards are discretionary rulings committed to the judges who are most familiar with the parties and their conduct"); Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st Cir. 1990) (internal citation omitted) ("imposition of sanctions is essentially a 'judgment call'. . . and,

12

Case 3:10-cv-00711 Document 51 Filed 09/22/11 Page 12 of 13 PageID #: 394

as such seems best left to the judicial officer most familiar with the case")

## III. CONCLUSION

On the basis of the foregoing, the Court will deny CEI's Motion to Dismiss. The Court will also accept the R & R and overrule Defendants' objections thereto. Defendants' damages on the Counter-Complaint will be capped at $93,000.00, and CEI will be awarded reasonable attorney's fees of no less than $4,000.00. Finally, the case will be returned to the Magistrate Judge to determine whether additional attorney's fees should be imposed as a sanction in this case.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE